## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among (a) the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-OPM") of the Office of Personnel Management ("OPM"), which administers the Federal Employees Health Benefits Program ("FEHBP"), the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), the Tennessee Valley Authority ("TVA"), and the United States Department of Veterans Affairs ("VA") (collectively, the "United States"); (b) Agendia, Inc. ("Agendia"); and (d) Raymond Brig, M.D. and Lance Albertson (the "Relators") (hereinafter collectively referred to as the "Parties"), through their authorized representatives.

## RECITALS

A.      Agendia is a molecular diagnostics company that offers genomic testing designed to profile certain types of breast cancer.  At all pertinent times, Agendia offered a breast cancer genomic test called MammaPrint (CPT Code 81521).

B.      On March 26, 2021, Agendia submitted a voluntary disclosure to the OIG-HHS relating to potential violations of the Anti-Kickback Statute (42 U.S.C. § 1320a-7b) and the Physician Self-Referral Law (Stark) (42 U.S.C. § 1395nn) and indicating that Agendia would complete its investigation and submit a supplementary self-disclosure. On June 10, 2021, Agendia submitted a supplementary disclosure to OIG-HHS providing additional details ("Agendia Disclosure").

C.      On March 30, 2021, Relator Lance Albertson filed a *qui tam* action in the United States District Court for the Northern District of Georgia, captioned *United States of America ex rel. Albertson v. Agendia, Inc.*, No. 3:21-cv-00046-TCB (N.D. Georgia 2021) (the "Georgia Case");

D.      On August 6, 2021, Relator Raymond Brig filed a *qui tam* action in the United States District Court for the Eastern District of Tennessee captioned *United States of America ex rel. Raymond Brig, M.D. v. Agendia, Inc., et al.* No. 3:21-CV-286 (E.D. Tennessee 2021) (the "Tennessee Case").

E.      The Georgia Case was transferred to the United States District Court for the Eastern District of Tennessee on August 3, 2023, and was assigned case No. 3:23-CV-289. The Georgia Case has not been consolidated with the Tennessee Case as of the Effective Date of this Agreement. The Georgia Case and the Tennessee Case may be hereinafter referred to collectively as the "Civil Actions."

F.      On October 7, 2022, a relator filed a *qui tam* action in the United States District Court for the Northern District of Texas, captioned *United States of America ex rel. Hamm v. Agendia, Inc.*, No. 3:22-cv-2259-E (N.D. Tex. 2022) ("Texas Case"). In March 2024, the United States declined to intervene in the Texas Case due to, *inter alia*, the far more advanced investigations of the Tennessee Case and the Georgia Case. Following the declination to intervene, the relator in the Texas Case and the United States agreed to voluntarily dismiss the federal False Claims Act ("FCA") claims in the *qui tam* complaint. The voluntary dismissal in the Texas Case did not include the retaliation claims or claims pertaining to certain state Medicaid programs.

G.      The United States contends that Agendia submitted or conspired to submit false claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); the Federal Employee Health Benefits Program, 5 U.S.C. § 8901-8914 ("FEHBP"); TVA's Self-funded Employee Welfare Benefit Plan; and the Department of Veterans Affairs, Veterans Administration, 38 U.S.C. Chapter 17. The United States acknowledges that the states of Tennessee, California, Colorado, Georgia, Illinois, Michigan, New Jersey, New Mexico, Virginia,

and Washington (hereinafter the "Medicaid Participating States"), all of which are plaintiffs in the Texas Case, contend that Agendia submitted or conspired to submit false claims for payment to the Medicaid programs of the Medicaid Participating States.

H.      In order to resolve claims asserted pursuant to state law in the Texas Case, Agendia will enter into separate settlement agreements with the Medicaid Participating States (the "Medicaid State Settlement Agreements"), in the form to which Agendia and a team acting on behalf of the Medicaid Participating States have agreed, or in a form otherwise agreed to by Agendia and an individual Medicaid Participating State. The Medicaid Participating States shall receive settlement funds from Agendia pursuant to and in accordance with Paragraph 1 of this Agreement.

I.      Covered Conduct: The United States further contends that it has certain civil claims against Agendia for engaging in the following alleged conduct: From August 1, 2019, through September 30, 2022 (the "Pertinent Timespan"), Agendia knowingly devised and executed a scheme to cause the submission of false claims to Medicare, Medicaid, FEHBP, TVA, and VA for MammaPrint testing. Certain of the MammaPrint claims submitted to Medicare, Medicaid, FEHBP, TVA, and VA were false because the testing was not reasonable and necessary. Certain of the claims submitted to Medicare, Medicaid, TVA, and VA, but excluding FEHBP, were false because they were tainted by illegal remuneration. Specifically, during the Pertinent Timespan, Agendia provided remuneration to diagnostic radiologists, surgeons, and other medical providers to induce them to generate automatic, standing, or routine orders for MammaPrint. The remuneration consisted of extravagant dinners, excessive or improper honoraria, gift cards, and payments per referral (e.g., $45 per order) or a flat rate of $1,000 per month via independent contractor arrangements. The conduct described in this paragraph is hereinafter referred to as the "Covered Conduct."

J.     This Agreement is not an admission of liability by Agendia as to the Covered Conduct or the allegations in the Tennessee Case and Georgia Case, nor is it a concession by the United States or the Relators that the claims in the Tennessee Case and Georgia Case are not well founded.

K.     The Parties acknowledge that the Relators, who filed the complaints in the Tennessee Case and the Georgia Case, claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to each relator's reasonable expenses, attorneys' fees, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties have reached a full and final settlement pursuant to the Terms and Conditions set forth below.

## TERMS AND CONDITIONS

1.     Agendia shall pay to the United States and the Medicaid Participating States the sums provided for in this Paragraph 1, which will be collectively referred to herein as the "Settlement Amount."

a.     Initial Settlement Payment: No later than seven (7) business days after the Effective Date of this Agreement, Agendia shall pay to the United States the sum of **$735,825.00**, of which **$367,912.50** is restitution, by electronic funds transfer ("EFT") pursuant to written instructions to be provided by the United States.  Agendia shall pay the sum of **$14,175.00** to the Medicaid Participating States, of which **$7,087.50** is restitution, pursuant to written instructions to be provided by the Medicaid Participating States.

b.     Going Concern Contingency Provision: Agendia represents that it is taking steps to identify a purchaser to acquire all or a controlling percentage of the issued stock of the

Company ("Sale Event") but will continue with day-to-day operations while exploring options for a Sale Event. So long as Agendia continues operating as a going concern, Agendia shall pay to the United States and the Medicaid Participating States, in addition to any payments already made pursuant to the obligations required under Paragraph 1.a hereof, the principal sum of **$2,500,000** ("Going Concern Principal"), plus interest at the rate of 4.25% per annum in quarterly installment payments over ten (10) consecutive quarters in accordance with the amortized payment schedule attached hereto as Attachment A, with the first such quarterly installment being due on or before the tenth (10th) day of the first month of the second quarter following the quarter in which this Agreement becomes effective, and all subsequent quarterly payments being due on or before the fifth business day following the end of the quarter in question (hereinafter the "Going Concern Payments"). If Agendia ceases operating as a going concern while Agendia remains obligated by this paragraph to make Going Concern Payments, then the obligation to pay the Going Concern Payments shall be suspended until Agendia resumes operating as a going concern or a Sale Event is closed or becomes final, whichever occurs first. During any period in which the obligation to pay the Going Concern Payments is suspended for any reason, interest at the rate of 4.25% per annum shall continue to accrue. If, at any point prior to full payment of the Going Concern Principal, plus all accrued interest, Agendia actually or effectively ceases day-to-day operations and actually or effectively terminates efforts to negotiate with or seek a prospective buyer to purchase the company, then the Going Concern Principal and all accrued interest shall become due and payable immediately.

If a Sale Event is closed and becomes effective while Agendia remains obligated by this paragraph to make Going Concern Payments (including during a period when such obligation is suspended due to a cessation of day-to-day operations pursuant to this Paragraph 1.b), then the remaining Going Concern Principal amount to be paid under this Paragraph 1.b, plus all accrued

interest, shall be paid to the United States and the Medicaid Participating States within thirty (30) days.

There will be no prepayment penalty should Agendia pay the balance of the Going Concern Principal earlier than required, but the Parties agree that interest at the rate of 4.25% per annum on any outstanding balance which is subject to any prepayment shall accrue from the Effective Date of this Agreement through the date of prepayment. 98.11% of each Going Concern Payment made pursuant to this Paragraph 1.b shall be paid to the United States by EFT pursuant to written instructions to be provided by the United States and 1.89% of the Going Concern Payment shall be paid to the Medicaid Participating States pursuant to written instructions to be provided by the Medicaid Participating States.

All payments required by this Paragraph 1.b shall be made by EFT, pursuant to written instructions provided by the United States and the Medicaid Participating States. If the United States – in its sole discretion – determines that Agendia failed to make any payment on or before the dates specified in Paragraphs 1.a and 1.b, then Agendia shall be in Default ("Default").

Agendia further agrees to execute a Stipulation for Consent Judgment wherein it stipulates to, among other things, the entry of a consent judgment if there is an Uncured Default (as defined in Paragraph 19(a), *supra*) of any Going Concern Payments. Agendia agrees to the entry of a consent judgment against it for the remaining unpaid balance of the Going Concern Payments plus court costs, expenses and attorney's fees equal to fifteen percent (15%) of the entire amount due at the time of the default. The Stipulation for Consent Judgment will be executed by Agendia at the time the Settlement Agreement is executed, and the United States may submit the consent judgment to the United States District for the Eastern District of Tennessee for entry in Case No. 3:21-CV-286, without adjudication or further demonstration of assent by Agendia.

c.    Sale Contingency Provision: Agendia shall provide written notice to the United States of: (1) any sale or transfer of all or a controlling percentage of the issued stock of the Company – including any discrete sale or transfer of stock which has the effect of giving the purchaser a controlling percentage of the issued stock; (2) any sale, transfer, or liquidation of assets of Agendia, including but not limited to the sale of any intellectual property rights or interests related or pertaining to the genomic test known as MammaPrint; or (3) any merger of Agendia with another entity (any and all of which are referred to herein as and included in the term "Sale Event").  Agendia shall provide the written notice of a Sale Event to the United States by certified mail and e-mail, addressed as follows, not less than fifteen (15) business days prior to the closing date of the Sale Event:

Alan G. McGonigal, Assistant U.S. Attorney
Alexa Ortiz Hadley, Assistant U.S. Attorney
U.S. Attorney's Office-Eastern District of Tennessee
800 Market Street, STE 211
Knoxville, TN 37902
alan.mcgonigal@usdoj.gov
alexa.hadley@usdoj.gov

Upon the occurrence of a Sale Event, Agendia shall make a supplementary payment to the United States and the Medicaid Participating States, in addition to the payments required and/or made pursuant to Paragraphs 1.a and 1.b of this Agreement within seven (7) business days of the closing date of the Sale Event (hereinafter the "Sale Event Payment").  The Sale Event Payment shall be made from the net proceeds of the Sale Event. The term "Net Proceeds" shall mean the gross amount of the Sale Event less Transaction Costs.

Agendia shall provide to the United States in writing an itemized list of all Transaction Costs - including documentation supporting each enumerated Transaction Cost - as soon as they are known to Agendia and no later than the closing date of the Sale Event. The itemized list of all Transaction Costs provided to the United States shall be certified as true and accurate by

Agendia's Chief Executive Officer ("CEO") at the time it is presented.

The amount of the Sale Event Payment ("Sale Event Payment Amount") shall be determined in accordance with the following table:

| Sale Event Payment Tiers | Net Proceeds from Sale Event *(Gross Amount of the Sale Event Less Transaction Costs)* | Sale Event Payment Amount |
|---|---|---|
| Tier 1 | Any sum up to $111,000,000 | $2,250,000 |
| Tier 2 | $111,000,000.01 to $175,000,000 | 1.25% |
| Tier 3 | $175,000,000.01 to $225,000,000 | 1.50% |
| Tier 4 | $225,000,000.01 to $275,000,000 | 2.00% |
| Tier 5 | Greater Than $275,000,000 | 2.50% (up to $6,750,000) |

The Parties agree that the percentages in Tier 2 through Tier 5 of the table above shall apply to the "Net Proceeds" (Sale Event Amount minus Transaction Costs) in excess of $111,000,000. For example, and the avoidance of doubt, Net Proceeds of $180,000,000 shall result in a Sale Event Payment of $3,285,000, calculated as the sum of $2,250,000 (initial Tier 1 payment), plus $1,035,000 (1.50% of $69,000,000 ($180,000,000 minus $111,000,000)) in accordance with Tier 3. The Parties further agree that notwithstanding any provision of this Agreement, the Sale Event Payment Amount shall not exceed **$6,750,000**.

Moreover, the Parties agree that Agendia shall be required to make the Sale Event Payment only if, (1) a Sale Event is closed during the ten (10) consecutive quarters when the Going Concern Payments are scheduled to be made (regardless of whether Agendia prepays such amounts); or (2) Agendia enters into a term sheet or purchase agreement with a prospective buyer during said ten (10) consecutive quarters and the Sale Event is closed within one hundred twenty (120) days of the end of said ten (10) consecutive quarters.

98.11% of a Sale Event Payment made pursuant to this Paragraph 1.c shall be paid to the United States by EFT pursuant to written instructions to be provided by the United States and

1.89% of the Sale Event Payment shall be paid to the Medicaid Participating States pursuant to written instructions to be provided by the Medicaid Participating States.

If Agendia fails to make any payment on or before the dates specified in this Paragraph 1.c, then Agendia shall be in Default ("Default").

d.    Sale Event Exception: Within ten (10) business days of the effective date of this Agreement, Agendia shall provide to the United States the names of all individuals and entities that own shares in Agendia as well as the type and number of shares owned by each shareholder ("Shareholder Disclosure"). The Parties acknowledge that a shareholder or group of two or more shareholders ("Collaborating Shareholders") identified in the Shareholder Disclosure may invest capital after the effective date of this Agreement for the limited purpose of financing the continuation of operations while Agendia seeks a suitable purchaser and effectuates the Sale Event ("New Capital Investment"). Any shareholder identified in the Shareholder Disclosure who provides New Capital Investment may acquire additional newly issued shares of Agendia stock in exchange for New Capital Investment ("Additional Stock Acquisition"), even if the Additional Stock Acquisition results in the shareholder or Collaborating Shareholders holding a majority of the voting shares of the company. The Parties agree that an Additional Stock Acquisition, including an Additional Stock Acquisition that results in a shareholder or Collaborating Shareholders holding a majority of Agendia's voting shares, will not constitute a Sale Event unless the shareholder or Collaborating Shareholders take steps to acquire actual or effective control of Agendia's Board of Directors and/or take actual or effective control of day-to-day operations of Agendia ("Change of Corporate Governance"). The Parties agree that any Change of Corporate Governance resulting from one or more Additional Stock Acquisition(s) shall constitute a Sale Event.

e.    Additional Definitions: In addition to all other definitional language

provided in this Agreement the following terms shall, for purposes of this Paragraph 1, mean: *intellectual property rights or interests* shall mean any and all intellectual creations or conceptions of the mind including, but not limited to, literary works, artistic works, inventions, designs, symbols, names, images, computer codes, and scientific processes – and encompasses all patents, trademarks, copyrights, and trade secrets; *Transaction Costs* shall mean (1) state, federal, and local taxes, (2) mandatory repayment of the secured debts and liens, identified in the sworn Financial Statements and attachments thereto that Agendia disclosed to the United States in August 2023, including any refinancing, restructuring, or replacement of such secured debts and liens, and that had not been satisfied as of the date of the Sale Event, (3) Incurred Legal Fees, and (4) reasonable and necessary costs and expenses directly incurred by Agendia and paid to non-related parties for the purpose of effectuating the Sale Event; *Incurred Legal Fees* shall mean unpaid fees for legal services - pertaining to corporate, commercial, and financial matters and issues that arose from the United States' investigation of the Covered Conduct - provided to Agendia by an external law firm from August 18, 2022 to the Effective Date of this Agreement (the amount and details of which have been disclosed to the United States as a supplement to the Financial Statements); *non-related party* shall mean a person or entity acting in a commercial capacity and not affiliated with Agendia, Inc. or Agendia NV in any way including, but not limited to, as an officer, director, employee, and/or shareholder.

        f.     <u>Restitution</u>: The Parties agree that one half of all payments made by Agendia pursuant to Paragraphs 1.b and 1.c hereof is restitution.

        2.     <u>Accuracy of Financial Disclosure Provision</u>: Agendia provided sworn financial disclosure statements ("Financial Statements") to the United States for purposes of an ability-to-pay review ("ATP Review"), and the United States has relied on the accuracy and completeness of those Financial Statements in electing to enter into this Agreement. Agendia represents and

warrants that the Financial Statements were complete, accurate, and current when submitted to the United States. If the United States learns of asset(s) in which Agendia had an interest on the Effective Date of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Agendia on or in connection with the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth of Agendia as set forth in the Financial Statements by $100,000 or more ("Undisclosed Net Worth"), then the United States may at its option: (a) rescind this Agreement and intervene in any pending FCA *qui tam* case based in whole or in part on the Covered Conduct; (b) rescind this Agreement and file a civil action based in whole or in part on the Covered Conduct; or (c) let the Agreement stand and collect the Settlement Amount, as set forth in Paragraph 1, and demand payment of a sum equal to one hundred percent (100%) of the Undisclosed Net Worth (the "Undisclosed Net Worth Amount"). Upon receiving a written demand from the United States, Agendia shall pay the Undisclosed Net Worth Amount to the United States by EFT within seven (7) business days of receiving the demand, pursuant to written instructions provided by the United States. In the event the United States pursues and obtains a recovery under Paragraphs 2.a-c herein, the United States agrees that a Relator's Share from the proceeds of any such recovery will be paid to Relators Brig and Albertson in accordance with the terms of Paragraph 3(d) herein, such Relator's Share to be paid regardless of whether either Relator Brig's or Relator Albertson's respective qui tam lawsuits are "pending" when the United States makes the election to proceed under Paragraphs 2.a, 2.b, or 2.c.

Agendia also agrees that any intentional or unintended misrepresentation or nondisclosure that resulted in Undisclosed Net Worth shall toll the statute of limitations in 31 U.S.C. § 3731(b) or any other statute of limitation that is or may be applicable to the Covered Conduct.

3.    The Relators acknowledge they have entered into a separate agreement providing for the division of the Relators' share, provided for herein, between them.   Accordingly, the Relators' share shall be paid as follows:

a.    <u>Relators' Share Payment Under Paragraph 1.a</u> - Conditioned upon the United States receiving payment in full pursuant to Paragraph 1.a hereof, and as soon as feasible after receipt, the United States shall pay the sum of **$187,500.00** to the Relators by electronic funds transfer.

b.    <u>Relators' Share Payment Under Paragraph 1.b</u> - Upon the receipt of a payment pursuant to Paragraph 1.b hereof, and as soon as feasible after receipt, the United States shall pay a sum equal to 25% of the payment received to the Relators by electronic funds transfer. Under no set of circumstances will the United States be required to pay to the Relators more than 25% of the total amount received under the terms in Paragraph 1.b hereof.

c.    <u>Relators' Share Payment Under Paragraph 1.c</u> - Conditioned upon the United States receiving payment in full pursuant to Paragraph 1.c hereof, and as soon as feasible after receipt, the United States shall pay a sum equal to 25% of the payment received to the Relators by electronic funds transfer.  Under no set of circumstances will the United States be required to pay to the Relators more than 25% of the total amount received under the terms in Paragraph 1.c hereof.

d.    The United States shall pay 50% of all sums to be paid to the Relators pursuant to this Paragraph 3 to Relator Lance Albertson by EFT in accordance with instructions provided by counsel for Relator Albertson.  Likewise, the United States shall pay 50% of all sums to be paid to the Relators pursuant to this Paragraph 3 to Relator Raymond Brig, M.D. by EFT in accordance with instructions provided by counsel for Relator Brig.

4. Relator Brig's claim for expenses, attorneys' fees, and costs ("Relator Brig's Fees") pursuant to 31 U.S.C. § 3730(d) will be resolved through a separate agreement between Agendia, Relator Brig, and his legal counsel. Relator Albertson's claim for expenses, attorneys' fees, and costs ("Relator Brig's Fees") pursuant to 31 U.S.C. § 3730(d) will be resolved through a separate agreement between Agendia, Relator Albertson, and his legal counsel.

5. Subject to the exceptions in Paragraph 9 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, the United States releases Agendia, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

6. Subject to the exceptions in Paragraph 9 below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, Relator Brig, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Agendia, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; the corporate successors and assigns of any of them; and current directors, officers and employees from any civil monetary claim Relator Brig has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733. Subject to the exceptions in Paragraph 9 below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, and with the exception of his claim against Agendia under 31 U.S.C. §3730(h), Relator Albertson, for himself and for his heirs,

successors, attorneys, agents, and assigns, releases Agendia, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; the corporate successors and assigns of any of them; and current directors, officers and employees from any civil monetary claim Relator Albertson has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

7. In consideration of the obligations of Agendia in this Agreement, and upon the United States' receipt of full payment of the Settlement Amount, plus interest due under Paragraph 1, OIG-HHS shall release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Agendia under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this paragraph and in Paragraph 9 (concerning reserved claims), below. OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Agendia from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below.

8. In consideration of the obligations of Agendia in this Agreement, and upon the United States' receipt of full payment of the Settlement Amount, plus interest due under Paragraph 1, OPM shall release and refrain from instituting, directing, or maintaining any administrative action seeking debarment from the FEHBP against Agendia under 5 U.S.C. § 8902a or 5 C.F.R. Part 890 Subpart J or Part 919 for the Covered Conduct, except as reserved in this paragraph and

in Paragraph 9 (concerning reserved claims), below, and except if excluded by the OIG-HHS pursuant to 42 U.S.C. § 1320a-7(a). OPM expressly reserves all rights to comply with any statutory obligation to debar Agendia from the FEHBP under 5 U.S.C. § 8902a(b) (mandatory debarment) based upon the Covered Conduct. Nothing in this paragraph precludes OPM from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below.

9.      Notwithstanding the releases given in Paragraphs 5, 7, and 8 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

   a.  Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

   b.  Any criminal liability;

   c.  Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory exclusion from Federal health care programs or the FEHBP;

   d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

   e.  Any liability based upon obligations created by this Agreement;

   f.  Any liability of individuals;

   g.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

   h.  Any liability for failure to deliver goods or services due; and

   i.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

10.     Relators and their respective heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator Brig's receipt of the Relators' Share under Paragraphs 3.a-c herein, he and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.  Conditioned upon Relator Albertson's receipt of the Relators' Share under Paragraphs 3.a-c herein, he and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.

11.     Relator Brig, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Agendia, and its officers, agents, and employees, from any liability to him arising from the filing of the Civil Actions, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.  Relator Albertson, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Agendia, and its officers, agents, and employees, from any liability to him arising from the filing of the Civil Actions, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

12.     Agendia waives and shall not assert any defenses Agendia may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the

Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13. Agendia fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Agendia has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

14. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), FEHBP carrier, TVA, or any state payer, related to the Covered Conduct; and Agendia agrees not to resubmit to any Medicare contractor, FEHBP carrier, TVA, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

15. To the extent applicable, Agendia agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Agendia, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Agendia's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payments Agendia makes to the United States pursuant to this Agreement and any payments that Agendia may make to Relator, including costs and attorneys fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and FEHBP (hereinafter referred to as "Unallowable Costs").

b.     Future Treatment of Unallowable Costs:     Unallowable Costs shall be separately determined and accounted for by Agendia, and Agendia shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any state Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Agendia or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.     Treatment of Unallowable Costs Previously Submitted for Payment: Agendia further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid fiscal agents and FEHBP carriers and/or contractors, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any state Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Agendia or any of its

subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Agendia agrees that the United States, at a minimum, shall be entitled to recoup from Agendia any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Agendia or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Agendia or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

  d.   Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Agendia's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

16.   Agendia agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement, including former Agendia executives who participated in the Covered Conduct. Upon reasonable notice, Agendia shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Agenda further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and

records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

17.     With the exception of paragraphs that explicitly reference or provide for payments to be made by Agendia to the Medicaid Participating States, this Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.     Agendia agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

19.     The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due solely to Agendia's financial condition as reflected in the Financial Disclosures referenced in Paragraph 2.

a.     In the event that Agendia fails to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 1 above, Agendia shall be in Default of Agendia's payment obligations ("Default").  The United States will provide a written Notice of Default, and Agendia shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment.  Notice of Default will be delivered to Agendia, or to such other representative as Agendia shall designate in advance in writing.  If Agendia fails to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified schedule ("Uncured Default"), the remaining unpaid balance

of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.  In the event of Uncured Default, Agendia agrees that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Actions or bring any civil and/or administrative claim, action, or proceeding against Agendia for the claims that would otherwise be covered by the releases provided in Paragraphs 5 through 8 above, with any recovery reduced by the amount of any payments previously made by Agendia to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Actions; (iii) offset the remaining unpaid balance from any amounts due and owing to Agendia and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.  The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection.  In the event the United States pursues a collection action, Agendia agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, Agendia waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Agendia within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on March 29, 2021.  Agendia agrees not to contest any offset, recoupment, and/or collection action

undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

      c.     In the event of Uncured Default, OIG-HHS may exclude Agendia from participating in all Federal health care programs until Agendia pays the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to Agendia. Agendia waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7) and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Agendia wishes to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Agendia will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise.

      20.     Upon receipt of the payment described in Paragraph 1.a above, the named plaintiffs in Civil Action No. 3:21-CV-286 shall sign and file a Joint Stipulation of Dismissal of the Civil Action, which is pending in the U.S. District Court for the Eastern District of Tennessee, pursuant to Rule 41(a)(1). Upon receipt of the payment described in Paragraph 1.a above, the named plaintiffs in Civil Action No. 3:23-CV-0289 shall sign and file a Joint Stipulation of Dismissal of Counts I through V of the operative Civil Action, which is pending in the U.S. District Court for the Eastern District of Tennessee, pursuant to Rule 41(a)(1).

      21.     Each Party shall bear his/its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

      22.     Each party and signatory to this Agreement represents that he/it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

23. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement shall be in the United States District Court for the Eastern District of Tennessee. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

25. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities they represent, as indicated below.

26. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27. This Agreement is binding on Agendia's successors, transferees, heirs, and assigns.

28. This Agreement is binding on the Relators and their respective successors, transferees, heirs, and assigns.

29. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

30. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date" of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**[SIGNATURES BEGIN ON THE FOLLOWING PAGE]**

## THE UNITED STATES OF AMERICA

Dated: **12/31/2024**     By: _____
ALAN G. McGONIGAL
Assistant United States Attorney
Eastern District of Tennessee

Dated: _____     By: **ALEXANDRA HADLEY**     Digitally signed by ALEXANDRA HADLEY
Date: 2024.12.20 14:28:54 -05'00'
ALEXA ORTIZ HADLEY
Assistant United States Attorney
Eastern District of Tennessee

Dated: _____     By: _____
SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Dept. of Health and Human Services

Dated: _____     By: _____
EDWARD M. DEHARDE
Deputy Associate Director of Federal Employee
Insurance Operations,
Healthcare and Insurance
United States Office of Personnel Management

Dated: _____     By: _____
PAUL ST. HILLAIRE
Assistant Inspector General
for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management

## THE UNITED STATES OF AMERICA

Dated: _____          By: _____
                                     ALAN G. McGONIGAL
                                     Assistant United States Attorney
                                     Eastern District of Tennessee


Dated: _____          By: _____
                                     ALEXA ORTIZ HADLEY
                                     Assistant United States Attorney
                                     Eastern District of Tennessee


                                SUSAN     Digitally signed by SUSAN
                                          GILLIN
                                GILLIN    Date: 2024.12.23 17:26:05
Dated: 12/23/24                 By: _____-05'00'_____
                                     SUSAN E. GILLIN
                                     Assistant Inspector General for Legal Affairs
                                     Office of Counsel to the Inspector General
                                     Office of Inspector General
                                     U.S. Dept. of Health and Human Services


Dated: _____          By: _____
                                     EDWARD M. DEHARDE
                                     Deputy Associate Director of Federal Employee
                                      Insurance Operations,
                                     Healthcare and Insurance
                                     United States Office of Personnel Management


Dated: _____          By: _____
                                     PAUL ST. HILLAIRE
                                     Assistant Inspector General
                                      for Legal & Legislative Affairs
                                     Office of the Inspector General
                                     United States Office of Personnel Management

24

**THE UNITED STATES OF AMERICA**

Dated: _____      By: _____
                                 ALAN G. McGONIGAL
                                 Assistant United States Attorney
                                 Eastern District of Tennessee


Dated: _____      By: _____
                                 ALEXA ORTIZ HADLEY
                                 Assistant United States Attorney
                                 Eastern District of Tennessee


Dated: _____      By: _____
                                 SUSAN E. GILLIN
                                 Assistant Inspector General for Legal Affairs
                                 Office of Counsel to the Inspector General
                                 Office of Inspector General
                                 U.S. Dept. of Health and Human Services

                            **EDWARD**        Digitally signed by
                                              EDWARD DEHARDE
                            **DEHARDE**       Date: 2024.12.18 17:40:21
Dated: _____      By: _____-05'00'_____
                                 EDWARD M. DEHARDE
                                 Deputy Associate Director of Federal Employee
                                  Insurance Operations,
                                 Healthcare and Insurance
                                 United States Office of Personnel Management


Dated: _____      By: _____
                                 PAUL ST. HILLAIRE
                                 Assistant Inspector General
                                  for Legal & Legislative Affairs
                                 Office of the Inspector General
                                 United States Office of Personnel Management

## THE UNITED STATES OF AMERICA

Dated: _____          By: _____
                                    ALAN G. McGONIGAL
                                    Assistant United States Attorney
                                    Eastern District of Tennessee


Dated: _____          By: _____
                                    ALEXA ORTIZ HADLEY
                                    Assistant United States Attorney
                                    Eastern District of Tennessee


Dated: _____          By: _____
                                    SUSAN E. GILLIN
                                    Assistant Inspector General for Legal Affairs
                                    Office of Counsel to the Inspector General
                                    Office of Inspector General
                                    U.S. Dept. of Health and Human Services


Dated: _____          By: _____
                                    EDWARD M. DEHARDE
                                    Deputy Associate Director of Federal Employee
                                     Insurance Operations,
                                    Healthcare and Insurance
                                    United States Office of Personnel Management


Dated: _____          By: **PAUL ST HILLAIRE**  Digitally signed by PAUL ST HILLAIRE
                                                          Date: 2024.12.16 18:51:48 -05'00'
                                    PAUL ST. HILLAIRE
                                    Assistant Inspector General
                                     for Legal & Legislative Affairs
                                    Office of the Inspector General
                                    United States Office of Personnel Management

24

Dated: _12-23-24_     By: _____

JAROM T. SMARTT
Senior Manager and Assistant General Counsel
Tennessee Valley Authority

25

**THE DEFENDANT - AGENDIA, INC.**

Dated: 12/12/2024

By: _____
MARK R. STRALEY
Chief Executive Officer

Dated: 12/12/2024

_____
AMY HARGREAVES
Latham & Watkins LLP
Attorney for Agendia, Inc.

Dated: 12/12/2024

_____
JOSEPH C. HUDZIK
Latham & Watkins LLP
Attorney for Agendia, Inc.

## RELATORS

### RELATOR RAYMOND BRIG, M.D.

Dated: 12/13/24

By: _____
Raymond Brig, M.D.
Relator

Dated: 12/13/24

By: _____
David A. Burkhalter, II
D. Alexander Burkhalter, III
Zachary J. Burkhalter
Counsel for Relator

### RELATOR LANCE ALBERTSON

Dated: _____

By: _____
Lance Albertson
Relator

Dated: _____

By: _____
Ramsey B. Prather
Butler Wooten & Peak, LLP

Dated: _____

By: _____
Bradley W. Pratt
Pratt Clay, LLP

27

Docusign Envelope ID: A0272699-B58E-4B46-B7C2-650B0114511A

Docusign Envelope ID: A7333250-B8B6-4C7D-91E6-A440CEAA0C45

## RELATORS

### RELATOR RAYMOND BRIG, M.D.

Dated: _____          By: _____
                                    Raymond Brig, M.D.
                                    Relator


Dated: _____          By: _____
                                    David A. Burkhalter, II
                                    D. Alexander Burkhalter, III
                                    Zachary J. Burkhalter
                                    Counsel for Relator


### RELATOR LANCE ALBERTSON

Dated: 12/16/2024          By: _Lance Albertson_____
                               Lance Albertson
                               Relator


Dated: 12/17/24          By: _____
                             Ramsey B. Prather
                             ~~Butler Wooten & Peak, LLP~~
                             Butler Prather LLP


Dated: 12/17/2024          By: _____
                               Bradley W. Pratt
                               ~~Pratt Clay, LLP~~
                               Bayuk Pratt

27

ATTACHMENT A TO SETTLEMENT AGREEMENT

| Payment Terms | | | |
|---|---|---|---|
| Going Concern Contingency Payment: | $ 2,500,000.00 | | |
| Interest rate: 4.25% | | *Medicare trust fund rate, as of Sep 2023 | |
| Term (in quarters): 10 | | | |

| Quarter Ended | Payment Due Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| | | | | | $ 2,500,000.00 |
| 3/31/2025 | 4/10/2025 | $ 264,840.94 | $ 26,562.50 | $ 238,278.44 | $ 2,261,721.56 |
| 6/30/2025 | 7/8/2025 | $ 264,840.94 | $ 24,030.79 | $ 240,810.15 | $ 2,020,911.41 |
| 9/30/2025 | 10/7/2025 | $ 264,840.94 | $ 21,472.18 | $ 243,368.76 | $ 1,777,542.65 |
| 12/31/2025 | 1/8/2026 | $ 264,840.94 | $ 18,886.39 | $ 245,954.55 | $ 1,531,588.11 |
| 3/31/2026 | 4/7/2026 | $ 264,840.94 | $ 16,273.12 | $ 248,567.82 | $ 1,283,020.29 |
| 6/30/2026 | 7/8/2026 | $ 264,840.94 | $ 13,632.09 | $ 251,208.85 | $ 1,031,811.44 |
| 9/30/2026 | 10/7/2026 | $ 264,840.94 | $ 10,963.00 | $ 253,877.94 | $ 777,933.50 |
| 12/31/2026 | 1/8/2027 | $ 264,840.94 | $ 8,265.54 | $ 256,575.40 | $ 521,358.10 |
| 3/31/2027 | 4/7/2027 | $ 264,840.94 | $ 5,539.43 | $ 259,301.51 | $ 262,056.59 |
| 6/30/2027 | 7/8/2027 | $ 264,840.94 | $ 2,784.35 | $ 262,056.59 | $ 0.00 |
| Total | | $ 2,648,409.40 | $ 148,409.40 | $ 2,500,000.00 | |

| Quarterly Payment Distribution | | |
|---|---|---|
| United States allocation: | $ 259,835.45 | 98.11% |
| Medicaid Participating States allocation: | $ 5,005.49 | 1.89% |
| Total Quarterly Payment: | $ 264,840.94 | 100.00% |