# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. LANCE ALBERTSON,<br><br>Plaintiff/Relator,<br><br>v.<br><br>AGENDIA, INC.,<br><br>Defendant. | JURY TRIAL DEMANDED<br><br>Civil Action No. 3:23-CV-289<br><br>Related to Civil Action No. 3:21-CV-286 Per ECF 31 |

### PLAINTIFF LANCE ALBERTSON'S RESPONSE TO DEFENDANT AGENDIA INC.'S MOOT MOTION TO DISMISS (ECF 61, 62) THE NOW-SUPERSEDED INITIAL COMPLAINT (ECF 1) IN THIS CASE

To date, Plaintiff/Relator Lance Albertson has helped the United States recover more than $3 million that defendant Agendia, Inc. swindled from our Nation's vulnerable Medicare and Medicaid programs. Those funds were returned to the Treasury only after Mr. Albertson placed himself at grave professional risk by filing a False Claims Act whistleblower complaint against his former employer Agendia, thereby putting the United States on notice of the company's fraud.

The legitimacy of Mr. Albertson's allegations of Agendia's fraud have never been seriously questioned. Far from it, Mr. Albertson's allegations have been corroborated every step of the way. Just over four months after Mr. Albertson filed his whistleblower complaint against Agendia under seal in the Northern District of Georgia on March 30, 2021, a physician named Dr. Raymond Brig who Mr. Albertson had never met and did not know from Adam's housecat filed a substantially similar False Claims Act whistleblower complaint against Agendia under seal in this District. Despite the fact that the United States has intervened in fewer than a quarter

1

of all False Claims Act cases filed by whistleblowers, the United States Attorney's Office for the Eastern District of Tennessee quickly took an active interest in Agendia's fraud and aggressively pursued it. By April 2023, "Agendia and the U.S. Attorney's Office for the Eastern District of Tennessee were in active settlement negotiations" regarding the False Claims Act violations described in Mr. Albertson and Dr. Brig's complaints. ECF 51 at 1-4. By December 2024, Agendia had entered a multi-million-dollar settlement with the United States to resolve those claims. In its May 2025 press release announcing the settlement, the Department of Justice stated that "the settlement in this case demonstrates that the United States Attorneys' Office and federal, state, and local law enforcement partners, are using all tools available to redress fraud and abuse and preserve scarce financial resources for legitimate and necessary medical care."[1]

      Mr. Albertson's efforts to redress Agendia's fraud did not begin with the whistleblower complaint he filed under seal in federal court, however. Before reporting Agendia's fraud to the United States, Mr. Albertson first attempted to enact change from within the company. Mr. Albertson repeatedly informed company executives about his concerns with Agendia's misconduct. Then, in the first quarter of 2021, Mr. Albertson volunteered to speak with Agendia's lawyers on two separate occasions about his concerns. Mr. Albertson provided Agendia's lawyers with specific information about Agendia's illegal business practices, kickback schemes, and fraud. Mr. Albertson asked Agendia and its lawyers to put a stop to the company's misconduct. In response, Agendia fired him.

---

[1] Press Release, U.S. Attorney's Office for the Eastern District of Tennessee, "Agendia, Inc., Knoxville Comprehensive Breast Center, PLLC, And Knoxville Dermatopathology Laboratory, LLC Agree To Settle False Claims Act Allegations For More Than $3,750,000," (May 21, 2025), available at https://www.justice.gov/usao-edtn/pr/agendia-inc-knoxville-comprehensive-breast-center-pllc-and-knoxville-0.

Now that Agendia has settled the False Claims Act violations with the United States that Mr. Albertson and Dr. Brig brought to light, this case is now about this retaliatory firing, which likewise violated the False Claims Act. Under 31 U.S.C. § 3730(h), "any employee" who is "discharged . . . or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of [a False Claims Act action] or other efforts to stop 1 or more violations of" the False Claims act "shall be entitled to all relief necessary to make that employee . . . whole."

I. **Agendia's Motion to Dismiss is Moot.**

In advance of filing this response, Plaintiff Lance Albertson filed his First Amended Complaint (ECF 68). Under Federal Rule of Civil Procedure 15(a)(1)(B), Mr. Albertson was permitted to amend his "pleading once as a matter of course no later than . . . 21 days after service of a motion under Rule 12(b)." Agendia filed a Rule 12(b) motion with respect to Mr. Albertson's initial complaint on June 9, 2025. Mr. Albertson timely filed his First Amended Complaint on June 30, 2025.

As a result of Mr. Albertson's First Amended Complaint, Agendia's motion to dismiss (ECF 61) is moot. As the Sixth Circuit recently held, "once an amended pleading is interposed, the original pleading no longer performs any function in the case." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) (citations and quotation marks omitted). In the Sixth Circuit, "the general rule is that filing an amended complaint moots pending motions to dismiss." *Id.* The Sixth Circuit recognizes a very narrow exception to this general rule allowing a District Court to apply a pending motion to dismiss only to "portions of an amended complaint that are *substantially identical* to the original complaint." *Id.* (citations and quotation marks omitted) (emphasis added). But when an "amended complaint substantially revise[s] [the plaintiff's]

3

original complaint" and "include[s] new allegations against" the defendant, the motion to dismiss the initial complaint is moot. *Id.*

Mr. Albertson's amended complaint substantially revises and includes new allegations with respect to the False Claims Act retaliation allegations asserted in his initial complaint. Although Mr. Albertson believes Agendia's motion to dismiss was otherwise due to be denied, he amended his complaint out of abundance of caution to add additional factual detail responding to the contentions Agendia made in its now moot motion to dismiss. Among other additions, Mr. Albertson has added a dozen new paragraphs providing additional detailed information and material new allegations regarding the reports about Agendia's illegal business practices, kickback schemes, and fraud he voluntarily made to Agendia and its lawyers during the first quarter of 2021, well within three months of his retaliatory firing. *See* ECF 68, First Amended Complaint ¶¶ 122-134. Although Agendia's motion to dismiss with respect to Mr. Albertson's initial complaint lacked merit, this is no question that Mr. Albertson's First Amended Complaint pleads a claim for retaliation under the False Claims Act. A motion to dismiss Mr. Albertson's First Amended Complaint would be facially meritless in light of governing Sixth Circuit precedent. In the event Agendia files any such motion with respect to Mr. Albertson's First Amended Complaint, Mr. Albertson will timely respond based on the allegations contained in the operative complaint.

Mr. Albertson also notes that Agendia filed its motion to dismiss in violation of the Court's "Order Governing Motions to Dismiss," which requires the parties to "meet and confer prior to the filing of a motion to dismiss to determine whether it can be avoided." ECF 33. Agendia did not attempt to meet and confer with Mr. Albertson's counsel prior to filing the motion to dismiss. That is why Agendia's motion to dismiss does not contain the mandatory

"notice indicating that the parties have conferred to determine whether an amendment could cure a deficient pleading, and have been unable to agree that the pleading is curable by a permissible amendment." ECF 33. The Court's "Order Governing Motions to Dismiss" states the following in all capital letters: "MOTIONS TO DISMISS THAT DO NOT CONTAIN THE REQUIRED CERTIFICATION ARE SUBJECT TO BEING STRICKEN ON THE COURT'S MOTION." ECF 33.

Agendia's motion to dismiss proves the wisdom of the Court's Order requiring the parties to meet and confer before the defendant files a motion to dismiss. There is no question Mr. Albertson's First Amended Complaint satisfies Rule 8(a) and more than adequately pleads a claim for retaliation under the False Claims Act.

## II. Mr. Albertson's Response to Agendia's Moot Motion to Dismiss.

Solely out of abundance and without waiving the fact that the filing of Mr. Albertson's First Amended Complaint moots Agendia's motion to dismiss with respect to the initial complaint, Mr. Albertson submits the following response to Agendia's motion. Respectfully, the Court should not rule on Agendia's motion to dismiss with respect to the initial complaint. Likewise, Mr. Albertson respectfully submits that the Court should not apply Agendia's motion to dismiss to Mr. Albertson's First Amended Complaint since doing so would run counter to Sixth Circuit precedent holding that a District Court can apply a pending motion to dismiss only to "portions of an amended complaint that are *substantially identical* to the original complaint." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) (citations and quotation marks omitted). The portions of Mr. Albertson's First Amended Complaint concerning his retaliation claims are not substantially identical to his original complaint.

With that caveat out of the way, Mr. Albertson responds as follows:

5

A. *Relevant Allegations in Mr. Albertson's Initial Complaint*

Defendant Agendia makes and sells genomic tests for breast cancer. ECF 1, ¶ 2. During the relevant timeframe, Defendant marketed the tests to medical providers throughout the United States. *Id.* Agendia offered two tests: MammaPrint and BluePrint. *Id.* ¶ 29. Relator Lance Albertson is a former employee of Agendia. *Id.* ¶ 5.

In an effort to sell more genomic tests, Agendia developed and implemented a sales program starting in the fourth quarter of 2019 called the Rapid Results Program ("RRP"). *Id.* ¶ 30, 32. Agendia chose Mr. Albertson to lead the RRP as Regional Director in late 2019. *Id.* ¶ 31. Agendia committed fraud and FCA violations through the implementation of the RRP. *Id.* ¶ 34. The RRP included several schemes to induce fraud, and violations of the Anti-Kickback statute and False Claims Act. Those violations include:

a) Agendia implemented an unlawful scheme of routinely waiving co-insurance and deductible payments for patients who received Agendia genomic tests;

b) Agendia implemented a kickback scheme in which it paid employees of oncology practices to order tests;

c) Agendia implemented a scheme to bypass the individualized, patient-specific medical judgment of the physicians by arranging "standing orders" for tests for all breast cancer patients;

d) Agendia implemented a scheme that caused treating oncologists to perform medically unnecessary tests on old and medically irrelevant breast cancer specimens; and

e) Agendia implemented a kickback scheme in which it paid physicians for "speak programs" and purchased extravagant meals to induce the physicians to order more Agendia tests that were ultimately paid for by federal health insurance programs.

In 2020, Mr. Albertson became more involved with RRP. *Id.* ¶ 108. As he learned more about the RRP, Mr. Albertson became increasingly concerned that Agendia was violating federal law. *Id.* Mr. Albertson shared those concerns with other salespersons in spring of 2020. *Id.* ¶ 110.

In spring 2020, Mr. Albertson contacted Sylvia Sumida, Agendia's Human Resources Director, to express significant concerns about Agendia's business practices with RRP. *Id.* ¶ 112. Prior to accepting a promotion to Executive Director of Market Development, Mr. Albertson raised those concerns with Kurt Becker, Agendia's then Chief Financial Officer. *Id.* ¶ 113, 114. Mr. Albertson told Mr. Becker that he was considering accepting the position as Executive Director in order to take greater control of the RRP and attempt to end Agendia's unlawful business practices. *Id.* ¶ 114.

In early 2021, Agendia's new Chief Financial Officer, Brian Dow, notified all Agendia employees via email to preserve all documents dating back to 2015. *Id.* ¶ 116. A few days later, Mr. Albertson – and others – received notice that a "cell phone scan" would take place by Agendia's attorneys. *Id.* ¶ 117. Mr. Albertson then discussed the cell phone scan and RRP with Ms. Sumida, Mr. Becker, and Agendia's attorneys. *Id.* ¶ 118.

After Mr. Albertson met with Agendia's attorneys, he received a call from CEO Mark Straley. *Id.* ¶ 118. Mr. Straley congratulated Mr. Albertson on a successful year and a successful presentation. *Id.* Mr. Albertson asked Mr. Staley about the ongoing investigation by Agendia's attorneys. *Id.* Mr. Straley responded, "if corrections needed to be made, then Agendia would make them and move on." *Id.*

After the call with Mr. Staley, Mr. Albertson reached out once again to Mr. Becker and expressed concern that his job might be in jeopardy due to his raised concerns about RRP in 2020. *Id.* ¶ 119. Within two weeks of the call with Mr. Becker, Mr. Albertson was fired for an

7

alleged expense report violation. *Id.* ¶ 120. Mr. Becker refused to elaborate on the alleged expense report violation. *Id.* Mr. Albertson's termination was not actually related to an alleged expense report violation, but instead was due to his knowledge of unlawful RRP practices and the fact he raised those concerns with Agendia executives. *Id.* ¶ 122. Mr. Albertson was not the only one terminated by Agendia – Blosser, Flanagan, and Fuentes were terminated at the same time due to their knowledge of the RRP. *Id.* ¶ 124, 125.

### B. *Mr. Albertson's Initial Complaint Adequately Pled a Claim for FCA Retaliation.*

Agendia's motion to dismiss disregards Mr. Albertson's allegations set forth in his initial complaint and conflates what is required to establish a retaliation claim under 31 U.S.C. § 3730(h) with a much more stringent summary judgment standard that is not necessary at this stage of litigation.

To prove a retaliatory discharge claim under the False Claims Act, a plaintiff must show that he (1) engaged in protected activity; (2) his employer knew that he was engaged in the protected activity and (3) the employer discharged or otherwise discriminated against him as a result of the protected activity. *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 564 (E.D. Tenn. 2019). "This burden is not onerous, and the relator need only prove these elements by a preponderance of the evidence." *United States ex rel. Dunn v. Procarent, Inc.*, 615 F.Supp. 3d 593, 620 (W.D. Kentucky, July 20, 2022) (citations omitted). A complaint survives a motion to dismiss where a "plaintiff alleges that [he] observed purportedly fraudulent activity, [he] confronted [his] employer about it, and [his] employer fired [him] because of it." *Merritt v. Mountain Laurel Chalets, Inc.*, 96 F.Supp. 3d 801, 823 (E.D. Tenn. March 27, 2015).

Protected activity under the False Claims Act includes "efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). The "'protected activity' must relate to 'exposing fraud' or 'involvement with a false claims disclosure.'" *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 516 (6th Cir. 2000). "Internal reports of suspected misconduct constitute protected activity." *United States ex rel. Marshall v. University of TN Medical Center Home Care Services, LLC*, 2021 WL 3743189 at *13 (E.D. Tenn. Aug. 23, 2021).

Mr. Albertson's original complaint included extensive details regarding several conversations with and internal reporting to Agendia executives regarding RRP as a violation of the False Claims Act. ECF 1 at ¶ 112, 114, 118, 119. Mr. Albertson's internal reports to Agendia executives certainly show "some linkage between the activities [he complains] of and fraud on the government." *Marshall*, 2021 WL 3743189 at *13 (citations omitted). "A plaintiff must have both a 'subjective, good-faith belief' and an 'objectively reasonable belief that fraud is being committed against the government." *Rowe v. Fresenius Management Services, Inc.*, 2024 WL 4335901, *10 (E.D. Tenn. Sept. 27, 2024). For example, Mr. Albertson had a "good-faith belief" Agendia engaged in fraud when Agendia continued to employ "look back" testing *after* Dr. William Audeh "warned that there was no clinical relevance to ordering tests on specimens that were six to twelve months old" and the "results of these tests can only be used in real time as opposed to retrospectively." ECF 1 at ¶ 79.

Agendia's arguments that Mr. Albertson did not engage in protected activity lack merit.[2] Agendia argues incorrectly that Mr. Albertson had to stop "specific FCA violations" in his

---

[2] Agendia's reliance on *Fakorede v. Mid-South Center, P.C.* is misplaced. 709 Fed. Appx. 787, 790 (6th Cir. 2017). The Court in *Fakorede* stated because the complaint did not show the plaintiff "understood, was motivated by, or even aware of that possibility" of claims being

9

reporting of concerns and did not "press any concern about the FCA" when speaking to others. Agendia's MTD at p. 12. Plaintiffs are "not required" to use words like "FCA violation" or "qui tam." *United States v. Chattanooga-Hamilton County Hospital Authority*, 2024 WL 221758 at *12 (E.D. Tenn. Jan. 19, 2024). Agendia executives, as sophisticated businesspersons, would know that Mr. Albertson's complaints about kickbacks, "standing orders," waiver of insurance and deductible payments, and medically unnecessary tests would implicate the False Claims Act. Staley's response to Mr. Albertson that Agendia would make corrections if necessary "further suggest that [Staley] understood [Albertson's] efforts implicated the FCA. *Id.* at *12. *See also* ECF 1 at ¶ 115.

Mr. Albertson sufficiently pled that Agendia had notice of his protected activity, thus meeting the second element of the retaliation claim. "Allegations that an employee has reported or complained to supervisors about possible fraud on the government are sufficient to meet" the notice element of a FCA retaliatory discharge claim. *Marshall*, 2021 WL 3743189 at *14. "To clear the low bar required to establish a prima facie case, the fact that high level [defendant] executives learned of the [plaintiff's] whistleblowing several months before his firing suffices to show knowledge." *Harrington v. Aggregate Industries Northeast Region, Inc.*, 668 F.3d 25, 32 (1st Cir. 2012).

---

submitted to the federal government, that his complaint failed to prove the first prong – protected activity. *Id.* at 790. The facts in *Fakorede* are completely distinguishable from Mr. Albertson's case. Mr. Albertson understood and was aware of the possibility that Agendia was engaging in fraudulent activity through the submission of false claims to the federal government. Mr. Albertson certainly "understood the connection between the FCA" and was "motivated by this connection" when he accepted that Executive Director position to take "greater control of the RRP and attempt to put an end to Agendia's unlawful business practices." *Fakorede*, 709 Fed. Appx. at 790, Compl. ¶ 114.

Mr. Albertson's complaint sets forth at least five instances where Mr. Albertson made reports and complaints to Agendia employees, including his supervisors about Agendia's use of independent contractor agreements and Agendia's abuse of "look back" testing. ECF 1, ¶ 110, 112, 114, 117, 118. Agendia's claim that Mr. Albertson's complaints were generalized and vague is misleading. Mr. Albertson's complaints about fraud surrounding the RRP included explicit references to the "look back" testing and Agendia's use of the independent contractor agreements. *Id.* at ¶ 110, 111, 112. Mr. Albertson's reference to Agendia's jargon (i.e., "look back" testing) in his complaints to Agendia employees and executives "can still give a defendant notice if 'a defendant would have understood a plaintiff's complaints to implicate fraud on the government.'" *Chattanooga-Hamilton Cnty.*, 2024 WL 221758, a*12 (*quoting United States ex rel. Crocket v. Complete Fitness Rehabilitation, Inc.*, 721 F. App'x at 461).

To meet the final element of retaliatory discharge under 31 U.S.C. § 3730(h), Mr. Albertson "must show that the retaliation was motivated, as least in part, by the employee's engaging in protective activity." *Marshall*, 2021 WL 3743189 at *14. The plaintiff "must offer evidence that would support a reasonable trier of fact in concluding that the plaintiff was terminated, at least in part, because of [his] protected activity." *U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 609 (S.D. Tex. 2012) (*quoting U.S. ex rel. Dyson v. Amerigroup Texas, Inc.*, 2005 WL 2467689 at *3 (S.D. Tex. 2005)). At the motion to dismiss stage, Mr. Albertson has clearly pled facts that would meet this burden.

Mr. Albertson started raising concerns regarding fraudulent activity within the RRP in 2020 as his involvement in the program deepened. ECF 1 at ¶ 108, 112. Mr. Albertson continued to raise those concerns to Agendia executives over the course of several months. *Id.* ¶ 114. In 2021, just two weeks prior to his termination, Mr. Albertson raised the same RRP fraudulent

11

concerns to Agendia executives Mr. Becker and Mr. Staley. *Id.* ¶ 118, 119, 120. Mr. Albertson reported those concerns even after he was recognized and promoted for excellent work in his role as Executive Director of Market Development. *Id.* ¶ 114, 115, 118. "Temporal proximity between the protected activity and the retaliatory conduct can be sufficient to permit an inference of causation in limited circumstances." *Marshall, LLC*, 2021 WL 3743189 at *14. Albertson was fired only *two weeks* after his phone call with Mr. Becker where Albertson acknowledged he had raised concerns about the RRP beginning in 2020. ECF 1, ¶ 120. Similar to Mr. Albertson, the plaintiff in *Marshall* received "positive performance reviews and termination without warning." *Marshall*, 2021 WL 3743189 at *15. The Court determined the "temporal proximity, on its own and in conjunction with" the positive reviews and abrupt termination "are sufficient evidence of causation at this stage." *Id.* at *14. "The showing necessary to demonstrate the causal-link part of the *prima facie* case is not onerous; the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.") *U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 608 (S.D. Tex. 2012).

In attempting to disprove causation, Agendia repeatedly confuses the motion to dismiss standard with the more stringent summary judgment standard. Every single case Agendia cites to in order to incorrectly assert that Mr. Albertson fails to sufficiently meet the element of causation were decided *at the summary judgment stage or the judgment as a matter of law stage*. Here, Mr. Albertson's case "does not involve evidentiary sufficiency on a motion for summary judgment but pleading sufficiency on a motion to dismiss, in which the issue is whether the allegations plausibly state a prima facie case of retaliation." *U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 610 (S.D. Tex. 2012). *See also Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615

("[O]ther causal weaknesses will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6).").

Finally, Agendia makes a last-ditch effort to refute Mr. Albertson's legitimate retaliation claims by alleging that Mr. Albertson "acknowledges the legitimate and non-retaliatory reasons for his termination." Agendia's MTD at 17. No, he does not. Mr. Albertson's initial complaint is crystal clear that "the *alleged* expense report violation was a pretext for his termination." ECF 1 at 35 (emphasis added). Mr. Albertson has always denied that he committed any alleged expense report violation. In any event, "a plaintiff does not have to show that his termination was *solely* on the basis of retaliatory reasons." *Rowe v. Fresenius Management Services, Inc.*, 2024 WL 4335901, *13 (E.D. Tenn. Sept. 27, 2024) (emphasis in original). Mr. Albertson has clearly pled a claim for FCA retaliation.

## **CONCLUSION**

The filing of Mr. Albertson's First Amended Complaint has mooted Agendia's motion to dismiss. Mr. Albertson respectfully requests that the Court deny that motion as moot and give Mr. Albertson the opportunity to respond to any motion to dismiss Agendia files with respect to Mr. Albertson's First Amended Complaint, in the unlikely event Agendia does so.

Respectfully submitted this 30th day of June, 2025.

                BUTLER PRATHER LLP

                BY: */s/ Ramsey B. Prather*
                    RAMSEY B. PRATHER
                    Ramsey@butlerprather.com
                    Georgia Bar No. 658395
                    CAROLINE W. SCHLEY
                    Georgia Bar No. 511349
                    105 13th Street
                    Columbus, GA 31901
                    Phone: (706) 322-1990

Fax: (706) 323-2962

BAYUK PRATT LLC

BY: <u>*/s/ Bradley W. Pratt*</u>
      BRADLEY W. PRATT
       Bradley@bayukpratt.com
       Georgia Bar No. 586672
      4401 Northside Parkway NW
      Suite 390
      Atlanta, GA  30327
      Phone: (404) 500-2669

***Counsel for Plaintiff/Relator***

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| LATHAM & WATKINS LLP<br>Joseph B. Farrell<br>Laura Zabele<br>355 South Grand Avenue, Suite 100<br>Los Angeles, CA 90071<br>Telephone: (213) 485-1234<br>joe.farrell@lw.com<br>laura.zabele@lw.com | BASS BERRY & SIMS PLC<br>Matthew M. Curley (018613)<br>Scott D. Gallisdorfer (036014)<br>21 Platform Way South, Suite 3500<br>Nashville, TN 37203<br>Telephone: (615) 742-6200<br>mcurley@bassberry.com<br>scott.gallisdorfer@bassberry.com |

*Attorneys for Defendant*

This 30th day of June, 2025.

BUTLER PRATHER LLP

BY: */s/ Ramsey B. Prather*
      RAMSEY B. PRATHER
      Ramsey@butlerprather.com
      Georgia Bar No. 658395

105 13th Street
Columbus, GA 31901
Phone: (706) 322-1990
Fax: (706) 323-2962